IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

S.E.S., *as Next Friend and Mother of* J.M.S., a Minor,

        Plaintiff,

vs.

GALENA UNIFIED SCHOOL DISTRICT NO. 499,

        Defendant.

Case No. 18-2042-DDC-GEB

**MEMORANDUM AND ORDER**

Plaintiff S.E.S. brings this action against defendant Galena Unified School District No. 499 on behalf of her minor son J.M.S., asserting two claims: (1) sex/gender harassment violating Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 ("Title IX"; Count I) and (2) negligent supervision under Kansas common law (Count II). Defendant has filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting that plaintiff's Complaint fails to state a claim for relief. Doc. 10. Plaintiff filed a Memorandum in Opposition to defendant's Motion to Dismiss. Doc. 16. Defendant then filed a Reply. Doc. 17. The matter thus is fully briefed, and the court is prepared to rule. Plaintiff's response concedes the motion as it applies to Count II, and thus, the court dismisses Count II from the lawsuit. For reasons explained below, the court denies the remainder of defendant's Motion to Dismiss.

**I.   Factual Background**

The following facts come from plaintiff's Complaint (Doc. 1). The court must accept the facts asserted in the Complaint as true and views them in the light most favorable to plaintiff.

*Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

J.M.S. was a student at Galena Middle School from 2014 to 2017. While enrolled there, J.M.S. endured sex and gender discrimination in violation of Title IX. The harassment began in response to J.M.S.'s gender or refusal to conform to stereotypical male characteristics at Galena Middle School. J.M.S.'s friends mocked J.M.S. for dressing in sport shirts and khaki slacks while other boys tended to wear athletic gear—shorts, sweatpants, tee-shirts, or sweatshirts. The perpetrators were schoolmates subject to defendant's disciplinary authority.

J.M.S. endured verbal harassment, physical threats, and physical contact. Due to his diagnosis of Idiopathic Thrombocytopenic Purpura ("ITP")—a bleeding disorder in which the immune system destroys platelets—J.M.S. has greater risk of physical harm. Students and teachers knew about his diagnosis and enhanced risk to harm. Yet, fellow students nonetheless hit plaintiff in the head. Plaintiff S.E.S. saw the students subjecting her son to the harassment and physical conduct. She repeatedly reported the behavior to defendant's employees but they did nothing to alleviate it.

Plaintiff alleges that the harassment was "so severe, pervasive, and objectively offensive that it effectively deprived [J.M.S.] of access to educational benefits or opportunities provided by the school district." Doc. 1 at 20 (Compl. ¶ 83). To avoid instances of "bullying, harassing, and gay-bashing" at Galena Middle School, both J.M.S. and G.L.S. (his younger brother) have enrolled at school in Joplin, Missouri, for the 2017–2018 school year. Doc. 1 at 20–21 (Compl. ¶¶ 71–72). The harassment has caused J.M.S. to incur actual damages in the form of extreme embarrassment, humiliation, anxiety, depression, and emotional pain. A medical evaluation diagnosed J.M.S. as a victim of psychological abuse, causing adjustment disorder with anxiety.

Neuropsychologists prescribed individual psychotherapy for J.M.S., and he continues to participate in this treatment.

## II. Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss under Rule 12(b)(6), the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering whether a plaintiff has pleaded a plausible claim, the court must assume that the factual allegations in the complaint are true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). But, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

### III. Analysis

Count I claims that defendant's actions violated Title IX. Invoking Rule 12(b)(6), defendant asserts that Count I fails to state a claim for two reasons: (1) the claim is not viable because it is premised on alleged harassment based on sexual orientation; and (2) the Complaint does not plead sufficient facts to support a Title IX claim under a gender stereotyping theory. Doc. 17 at 3–4. The court considers defendant's arguments in subsections A and B, which follow. But before it turns to that targeted discussion, the court outlines the larger context of legal principles governing a Title IX claim.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Courts generally assess Title IX discrimination claims using the same legal analysis as Title VII claims. *E.g.*, *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001). Courts readily conclude that same-sex student-on-student harassment is actionable under Title IX to the same extent that same-sex harassment is actionable under Title VII. *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 963 (D. Kan. 2005) (citing *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 65–66 (1st Cir. 2002)).

The Supreme Court has provided three instructive evidentiary methods for a same-sex plaintiff to show that the harassment was based on sex. *Oncale v. Sundowner Offshore Servs.*,

4

*Inc.*, 523 U.S. 75, 81 (1998). A plaintiff can show: (1) the harasser is motived by sexual desire; (2) the harasser is motivated by general hostility to the presence of the same gender in the workplace; or (3) direct comparative evidence about how the harasser treated both males and females in the workplace. *Id*. at 80–81.

The three evidentiary methods in *Oncale*, however, are not exhaustive. *Theno*, 377 F. Supp. 2d at 964. Courts have held that gender stereotyping is another method for proving that same-sex harassment is based on sex. *Medina v. Income Support Div.*, 413 F.3d 1131, 1135 (10th Cir. 2005) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 235 (1989)). Under this method, a plaintiff must show that the harassers were acting to punish the plaintiff for failing to conform to the stereotypes of his or her gender. *Id*. No matter the evidentiary route chosen, the plaintiff always must prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] . . . because of . . . sex." *Oncale*, 523 U.S. at 81.

### A. Defendant argues that plaintiff's claim is not actionable under Title IX because it alleges harassment based on sexual orientation.

*First*, defendant argues that plaintiff's Title IX claim is "premised on various accounts of alleged name-calling and teasing by other students consisting primarily of homosexual slurs and other insults referring to sexual orientation." Doc. 11 at 1. The Tenth Circuit has declined to extend Title IX to cover sexual orientation. *Medina*, 413 F.3d at 1135. Thus, defendant argues, a claim based on sexual orientation is not cognizable and subject to dismissal.

Plaintiff responds, claiming that defendant misconstrues the Title IX claim. Instead, plaintiff explains, the Complaint specifically alleges a gender stereotype-based theory of a Title IX claim. Doc. 1 at 21 (Compl. ¶ 76). For support, plaintiff relies on two cases. *See Schmedding v. Tnemec Co.*, 187 F.3d 862, 865 (8th Cir. 1999); *Montgomery v. Indep. Sch. Dist.*

5

*No. 709*, 109 F. Supp. 2d 1081, 1083 (D. Minn. 2000). In these cases, the plaintiffs alleged same-sex harassment that included taunts about being homosexual or other epithets suggesting homosexuality. *Schmedding*, 187 F.3d at 865; *Montgomery*, 109 F. Supp. 2d at 1093. The courts found these alleged acts indicative of harassment based on sex, and therefore, did not "'transform the complaint from one alleging harassment based on sex to one alleging harassment based on sexual orientation.'" *Montgomery*, 109 F. Supp. 2d at 1093 n.11 (quoting *Schmedding*, 187 F.3d at 865); *see also Oncale*, 523 U.S. at 77–78 (holding sexual discrimination consisting of same-sex sexual harassment is actionable under Title VII when the alleged harassment includes homosexual taunts and slurs directed at plaintiff).

Here, the Complaint alleges that harassers called J.M.S. derogatory names used to target homosexuals. Examples of this conduct include harassers calling J.M.S. "gay, faggot, bitch, and 'Locker Room', a name that harassers dubbed because they claimed the only reason J.M.S. started playing football was to see his peers naked in the locker room." Doc. 1 at 21 (Compl. ¶ 77.c.); *see also id.* at 21–23 (Compl. ¶¶ 77.a.–77.o.). Plaintiff asserts the harassers were "motivated by J.M.S.'s gender or his failure to conform to stereotypical male characteristics." Doc. 1 at 21 (Compl. ¶ 76). Construing the Complaint's allegations in plaintiff's favor, one properly could infer that the harassers used the derogatory names and the Locker Room nickname (taunts based on alleged homosexuality) to mock J.M.S.'s masculinity. Plaintiff never alleges that the harassers targeted J.M.S. because he is homosexual or perceived as such. The court thus rejects defendant's argument that plaintiff's claim is premised on sexual orientation. Instead, the court concludes that plaintiff states a viable Title IX claim of harassment based on sex.

### B. Defendant argues that plaintiff has failed to plead facts sufficient to support a Title IX claim premised on a gender stereotyping theory.

*Second*, defendant argues, even if plaintiff can assert a Title IX claim based on gender stereotyping, the Complaint fails to plead facts sufficient to support such a claim. Defendant argues that, though the Complaint alleges 16 examples of harassing conduct (Doc. 21 at 21–23 (Compl. ¶¶ 77.a.–77.o.)), these examples cannot support the plaintiff's conclusory allegation of harassment based upon sex.

To support this argument, defendant relies on three cases where each plaintiff alleged a speculative claim about their harassers' motivation. *See Higgins v. Saavedra*, No. CIV 17-0234 RB/LF, 2018 WL 327241, at *7 (D.N.M. Jan. 8, 2018); *Burwell v. Pekin Cmty. High Sch. Dist. 303*, 213 F. Supp. 2d 917, 930–32 (C.D. Ill. 2002); *Benjamin v. Lawrence Twp. Metro. Sch. Dist.*, No. IP 00-0891-C-T/K, 2002 WL 977661, at *3–4 (S.D. Ind. Mar. 27, 2002). In these cases, the alleged harassers subjected the plaintiffs to name-calling, but it did not rise to the level of actionable peer-on-peer sexual harassment under Title IX. *Higgins*, 2018 WL 327241, at *8 (concluding that plaintiff's "allegations generally describe students laughing at [plaintiff] and calling her names unrelated to any stereotypical notions of femininity"); *Burwell*, 213 F. Supp. 2d at 931 (explaining evidence that harassers called an alleged male victim the same sexual names as the female plaintiff undermined plaintiff's claim that the harassment was based on sex); *Benjamin*, 2002 WL 977661, at *4–5 (explaining the terms "bitch," "whore," and "slut" did not reference the plaintiff's sexual habits or specifically suggest some specific female characteristic but, instead, were used as pejorative terms for woman). Name-calling alone usually is not sufficient to support a gender-based Title IX claim, even if the words used have a sexual connotation or are gender-specific. *Davis, as Next Friend of LaShonda D. v. Monroe Cty. Bd. of*

7

*Educ.*, 526 U.S. 629, 651–52 (1999); *see also Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 965 (D. Kan. 2005).

*Theno* established, however, that if the name-calling has an underlying motivation of hostility toward the person's gender, it can support an actionable Title IX claim. *Theno*, 377 F. Supp. 2d at 965. The name-calling in *Theno* could be traced to a rumor started after the perpetrators caught plaintiff masturbating in the bathroom. In his opinion denying summary judgment against the Title IX claim, Judge Lungstrum reasoned that "a rational trier of fact could infer that plaintiff was harassed because he failed to satisfy his peers' stereotyped expectations for his gender because the primary objective of plaintiff's harassers appears to have been to disparage his perceived lack of masculinity." *Id*.

Similarly, here, the name-calling began when peers noticed J.M.S. dressed differently than the other boys at school. Doc. 1 at 3 (Compl. ¶ 11). Construing the Complaint's allegations in plaintiff's favor, one plausibly can infer that J.M.S.'s failure to dress consistent with the stereotype for boys his age motivated the derogatory name-calling. Indeed, the Complaint alleges J.M.S. was "harassed based upon gender in that, as alleged, *supra*, and especially at ¶¶ 11 and 12, in that his harassers were motivated by J.M.S.'s gender or his failure to conform to stereotypical male characteristics." Doc. 1 at 21 (Compl. ¶ 76). The Complaint thus alleges sufficient facts to support a claim of harassment based on the recognized gender-stereotyping theory.

**IV.    Conclusion**

For the reasons explained above, the court grants defendant's Motion to Dismiss (Doc. 10) in part and denies in part. The court dismisses plaintiff's negligent supervision claim (Count II) from this action. Count I may proceed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Galena Unified School District No. 499's Motion to Dismiss (Doc. 10) is granted in part and denied in part as set forth above.

**IT IS SO ORDERED.**

**Dated this 12th day of July, 2018, at Topeka, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**